UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JAMES GOODING | ) | |
| | ) | |
| V. | ) | NO. 2:05-CV-47 |
| | ) | NO. 2:02-CR-79 |
| | ) | Greer/Inman |
| UNITED STATES OF AMERICA | ) | |

## **REPORT AND RECOMMENDATION**

On November 7, 2002, defendant (or "petitioner") was found guilty of being a convicted felon in possession of a firearm. On February 24, 2003, he was sentenced to eighty-eight months incarceration, to be followed by three years of supervised release.[1] He appealed to the Sixth Circuit Court of Appeals, and that Court affirmed his conviction and sentence.[2]

Defendant timely filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).[3] The United States has responded to the motion. (Doc. 5). Defendant's motion has been referred to the magistrate judge for a report and recommendation[4] pursuant to the standing order of this Court and 28 U.S.C. § 636.

The opinion of the Court of Appeals provides a succinct narrative of the facts:

---

[1] No. 2:02-CR-79, Doc. 26.

[2] 351 F.3d. 738 (6th Cir. 2003).

[3] No. 2:02-CR-79, Doc. 38.

[4] No. 2:05-CV-47, Doc. 12; 2:02-CR-79, Doc. 40.

On December 27, 2001, Nancy Bridgeman and Amber Thomas were in their Johnson City, Tennessee, apartment when they heard a "commotion" coming from downstairs. An uninvited man entered the apartment. Both women testified that they were not previously acquainted with this man, who was later identified as Gooding. Gooding pulled a gun from his waistband and placed it on a couch and asked the women whether he could leave the gun in their possession for the moment. Gooding further explained that he would be in trouble if he was caught in possession of a gun. Additionally, Gooding allegedly inquired as to the whereabouts of a downstairs resident named "Kim"-apparently a reference to Kim Carroll-and stated that he intended to kill her. Bridgeman *740 denied Gooding's request to leave the gun in the apartment, but he nevertheless exited the apartment without the gun. Thomas placed the gun in a plastic bag and returned it to Gooding who, by this time, had returned to his truck located in the building's parking lot. One of the women then summoned the police.

Gooding's version of the events, however, differs significantly from the preceding testimony. Gooding claimed that he went to the apartment building in an effort to rescue his wife, an alleged drug addict, who frequently obtained drugs from a tenant in the building. Gooding testified that he went to the apartment building after he had received a phone call from his wife who stated that she was at Kim Carroll's apartment and that she desired to leave, but she did not have the money to pay for the drugs that she had consumed. After his failed attempt to convince his wife to come out of the apartment, Gooding testified that he told his wife through the apartment door that he was going to summon the police. Gooding testified that her response was that he had better not call the police because the gun-that she had allegedly purchased for security purposes while Gooding was in prison-was located in the truck. Gooding testified that he returned to the truck and discovered the gun. In a panic, Gooding claimed that he brought the gun upstairs to leave it with Bridgeman whom he had recognized from his frequent visits to the building to retrieve his wife and had even spoken to on occasion. Bridgeman allegedly allowed Gooding to leave the gun in the apartment.

Johnson City police officer, Paula Norris, answered the call to the apartment building. Officer Norris testified that she initially drove past the entrance to the parking lot, but she saw in her rearview mirror an individual traveling on foot who matched the description of the suspect with the gun. Officer Norris turned her cruiser around and entered the parking lot. She encountered a truck driven by the

2

> man that she saw in her rearview mirror. Officer Norris stopped her cruiser, exited, and ordered the driver of the truck to exit his vehicle. The driver, Gooding, eventually complied and submitted to a pat-down search. Officer Norris did not find a gun on Gooding's person. Upon Gooding's refusal to cooperate with her directions to remain seated, Officer Norris placed Gooding in handcuffs. After a search of his vehicle failed to reveal a gun, Officer Norris retraced Gooding's steps and discovered a plastic bag that contained a loaded handgun. Gooding immediately denied ownership of the gun. Norris turned the gun over to another officer who placed Gooding under arrest.

351 F.3d at 739-40.

Obviously, the jury believed Bridgeman, and disbelieved defendant; he was found guilty of being a convicted felon in possession of a firearm and sentenced accordingly.

Defendant argues that his conviction should be set aside for the following reasons:

(1) his conviction resulted from the use of evidence obtained by an unconstitutional search and seizure;

(2) the evidence used to convict him was obtained as the result of an unlawful arrest;

(3) he was convicted as a result of the government's failure to disclose to him favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

(4) he was denied the right to challenge Grand Jury venire and he was not allowed to voir dire them;

(5) purported eye witnesses failed to make an in-court identification of the defendant; and

(6) his attorney was constitutionally ineffective.

In order to obtain relief under § 2255, a petitioner must prove (1) an error of constitutional magnitude, or (2) a sentence imposed outside the statutory limits, or (3) an

3

error of fact or law that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003).

Pursuant to Rule 4, Rules Governing § 2255 Proceedings, a motion to vacate may be summarily denied if it plainly appears from the face of the motion that the defendant-petitioner is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). In this case, there is no need to hold an evidentiary hearing inasmuch as all of the facts necessary to the court's decision are already in the record.

Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim at his trial or on direct appeal constitutes a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998). If a federal prisoner has procedurally defaulted a claim, he must show "cause" to excuse his failure to raise that claim previously, and he also must show "actual prejudice" resulting from the alleged violation. *Bousley, supra*, at 622; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). If he fails to establish cause, it is unnecessary to determine if the defendant-petitioner was prejudiced by the alleged violation. *Bousley, supra*, at 623.

Each of defendant's claims will be addressed in the order set out previously.

*(1) THE CONVICTION RESULTED FROM THE USE OF EVIDENCE OBTAINED BY AN UNCONSTITUTIONAL SEARCH AND SEIZURE.*

*(2) THE EVIDENCE USED TO CONVICT DEFENDANT WAS OBTAINED AS A RESULT OF AN UNLAWFUL ARREST.*

These two claims overlap considerably and therefore will be addressed together. The evidence to which defendant refers is, of course, the firearm that resulted in his conviction. In his § 2255 motion, he asserts that when the police arrived upon the scene, the officer parked her car directly over a brown paper bag. According to defendant, he gave permission to the officer to search his vehicle and, in the course of that search, the officer found an empty "crack bag." Defendant states that the officer placed this empty baggie on the hood of her car, handcuffed him, and then interviewed the two witnesses for approximately fifty minutes. When the officer returned, she noticed the brown bag under her car. She kicked the bag, and discovered that it contained a gun. Defendant argues that the gun "was not within plain view, and the . . . search exceeded the scope of the officer's authority."

Defendant did not raise either of these issues before the district judge or the Court of Appeals; therefore, the claims are procedurally defaulted. In an effort to excuse his default, he maintains that he did not first present these claims to the district judge or Court of Appeals because these claims are "novel," and because his attorney was ineffective.

First, these claims are hardly novel, and nothing else need be said in that regard.

A procedural default, of course, can be excused if the claim was not initially presented to the trial court or the Court of Appeals because of the ineffectiveness of the defendant's attorney.

It is difficult, if not impossible, to resolve an issue of attorney ineffectiveness without analyzing to some extent the merits of the claim which the defendant-petitioner maintains should have been presented to the court, but was not. First, no evidence was presented at

5

trial regarding an empty crack baggie. How defendant-petitioner seeks to relate that crack baggie to the discovery of the firearm beneath the officer's car is not understood. Secondly, defendant had no expectation of privacy with respect to the brown bag and the gun it contained inasmuch as it was lying upon the pavement beneath the officer's car. The Fourth Amendment was in no way implicated when the officer observed that bag and then looked in it. Since the Fourth Amendment was in no way implicated, there was no requirement that the officer obtain a search warrant. A motion to suppress evidence of the gun based upon these facts would have been both futile and frivolous. An attorney is not ineffective when he or she declines to file motions which are utterly meritless.

Defendant additionally argues that he was unlawfully arrested, and the gun was seized pursuant to that unlawful arrest. The officer had come to the area in response to a phone call from one of the women with whom defendant had attempted to leave his handgun. The officer was alone, and she instructed the defendant to sit on a brick wall while she proceeded with her investigation. The defendant refused to sit, after which the officer handcuffed him.[5] In light of the defendant's refusal to obey her instructions, it was constitutionally permissible for the officer to handcuff defendant for her own safety. *United States v. Atchley*, 474 F.3d 840 (6th Cir. 2007).[6]

But even if it be assumed that defendant was arrested, even "unlawfully" arrested, defendant's argument that his arrest taints the subsequent discovery and seizure of the

---

[5] R. 30, TR. 27-29.

[6] *Atchley* arose from the Eastern District of Tennessee.

6

firearm is nevertheless legally incorrect. Again, he had no Fourth Amendment expectation of privacy in the contents of a paper bag lying on the pavement. A motion to suppress based upon this legal theory would have been frivolous and subject to the disapprobation of this court. Defendant's attorney cannot be said to be ineffective for declining to pursue a spurious claim.

These two claims were procedurally defaulted. Neither claim was "novel," and his attorney was not ineffective for failing to advance these claims.

### *(3) DEFENDANT WAS CONVICTED AS A RESULT OF THE GOVERNMENT'S FAILURE TO DISCLOSE TO HIM FAVORABLE EVIDENCE IN VIOLATION OF BRADY V. MARYLAND, 373 U.S. 83 (1963).*

The "favorable evidence" of which defendant speaks is the empty baggie mentioned previously. He states in his motion, "upon knowledge and belief," that evidence of this empty crack bag was presented to the Grand Jury and used to obtain an indictment against him for being a convicted felon in possession of a firearm. He asserts that this evidence "could have afforded [him] the means to challenge [his] conviction."

In its response, the United States states that it does not know if the existence of the crack baggie was mentioned to the Grand Jury, or not. Whether it was or was not, it is utterly irrelevant. Defendant was indicted and tried for being a convicted felon in possession of a firearm. No evidence was presented during the trial regarding an empty crack baggie. Therefore, if defendant is attempting to argue that evidence of the crack baggie presented to the Grand Jury somehow taints his subsequent indictment and conviction, that argument has absolutely no legal basis.

To the extent defendant argues that *Brady v. Maryland, supra*, requires that he be told of the existence of the crack baggie, that argument is lost upon the undersigned. It has no exculpatory value with respect to a charge of being a felon in possession of a firearm, irrespective of whether or not it was mentioned to the Grand Jury.

This claim (1) was procedurally defaulted, and (2) there was no cause for the default inasmuch as defendant's attorney was not ineffective for failing to argue a baseless claim.

***(4) DEFENDANT WAS DENIED THE RIGHT TO CHALLENGE THE GRAND JURY VENIRE AND HE WAS NOT ALLOWED TO VOIR DIRE THEM.***

Apparently defendant is simply attacking the constitutionality of the Grand Jury system in the United States. Suffice it to say that the Grand Jury process, both generally in the United States and in this specific case, is constitutional. *See, e.g., Douglas Oil Company of California v. Petrol Stocks, etc.*, 411 U.S. 211 (1979). This claim also was procedurally defaulted and, since his attorney was not ineffective in failing to argue the claim, there was no cause.

***(5) EYE WITNESSES FAILED TO MAKE AN IN-COURT IDENTIFICATION OF THE DEFENDANT.***

Defendant recites that he was only arrested by the police because "two girls" had called 911 and reported a man with a gun at the apartment building in which they lived, but during the trial none of these witnesses identified defendant as the man with the gun. Defendant argues that the testimony of the police officer was not legally sufficient to provide that identification inasmuch as the police officer only knew what the two witnesses told her.

Defendant then argues that the jury only *assumed* he was the man reported in the 911 call simply because he was the only defendant in the courtroom.

Defendant's factual assertions are incorrect. The witness Thomas, to be sure, was never asked to identify the defendant as the man who came into her apartment and asked to leave a gun there. And the Assistant United States Attorney *almost* failed to ask the witness Bridgeman, but she finally did so on redirect examination:

> Q. And now that you've had a chance to look at [your statement] to refresh your memory, Ms. Bridgeman, *did the defendant offer you money to keep the gun?*
> A. He told me he would give me $20 if I would tell him where Kim was at, and I told him no.
> Q. And did he say why he wanted to leave the gun in your apartment instead of taking it with him?
> A. No.

R. 30, TR. 18, *et seq*. [Italics supplied].

Clearly, Ms. Bridgeman identified defendant as the man who entered her apartment and asked to leave a gun there.

Quite apart from Ms. Bridgeman's testimony, another witness, Jill Bradley, provided testimony from which the jury could have reasonably inferred that defendant was the man who tried to leave a gun in Bridgeman's apartment:

> Q. Ms. Bradley, on December 27, 2001, did you go to Nancy Bridgeman's apartment in Johnson City, Tennessee?
> A. Yes.

R. 30, TR. 20.

> Q. Before you headed up the steps [to Bridgeman's apartment], or as you headed up the steps, did you see Amber Thomas?

9

> A. Yes.
> Q. How do you know Amber?
> A. She's my niece.
> Q. And where was she?
> A. She was at the bottom of the steps going down to the parking lot as I was coming up from the parking lot.
> Q. And what did she have?
> A. She had a plastic bag, and she opened it up, and she showed me that there was a gun in it.
> Q. And what did she do with that bag and that gun?
> A. She took it to the man that was in the truck.
> Q. And did she give it to him?
> A. Yes.

R. 30, TR. 21.

> Q. Did you try to call the police?
> A. Yes, I did, from my cell phone, 911.
> Q. And while you were talking to the police to report this, did you look out the window to see if the man was still there?
> A. Yes. Me and Nancy [Bridgeman] was in her bedroom looking out her bedroom window.
> Q. Was he still there?
> A. Yes.

R. 30, TR. 22.

> Q. And – – did you only see the gun when Ms. Thomas was giving it back to him?
> A. Yes.
> Q. Did you watch until he was taken into custody?
> A. No.
> Q. You watched – –
> A. Oh, until he was taken into custody?
> Q. Or until the police arrived – –
> A. Yes.
> Q. – – and handcuffed him?
> A. Yes.

R. 30, TR. 23.

10

Ms. Bradley's testimony, coupled with that of the police officer regarding the arrest of the defendant, provides more than sufficient identification of defendant as the man who attempted to leave a gun in Bridgeman's apartment, and who ultimately regained possession of that gun from Amber Thomas. Defendant-petitioner's argument that he was not identified in open court has no basis in fact, and the claim was procedurally defaulted.

### *(6) DEFENDANT'S ATTORNEY WAS CONSTITUTIONALLY INEFFECTIVE.*

As already discussed, defendant claims that the handgun was discovered as the result of an unconstitutional search and seizure, or as the result of an unlawful arrest. He argues that his attorney was constitutionally deficient in failing to file motions to suppress evidence of the handgun on each of these theories.

As noted earlier, since the handgun was in plain view and defendant had no expectation of privacy in it, the Fourth Amendment never came into play. Moreover, defendant was not under arrest at the time the handgun was discovered by the police officer and, even if he was, it was certainly not discovered as a result of his arrest, but merely because the police officer discovered it upon the pavement where defendant had abandoned it. Defendant's counsel was not ineffective in failing to file groundless motions to suppress.

### *CONCLUSION*

For the reasons set out above, it is recommended that defendant's motion to vacate, etc., be denied.[7]

---

[7] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United*

Respectfully submitted:

    s/ Dennis H. Inman
United States Magistrate Judge

---

*States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).